Honorable John C. Coughenour
Trial Date: June 22, 2009

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FARMERS INSURANCE COMPANY OF WASHINGTON, as subrogee for Trevor and Andrea Nipges, and Trevor and Andrea Nipges, a marital community,<br><br>Plaintiffs,<br>vs.<br><br>POLARIS INDUSTRIES, INC., a Minnesota corporation,<br><br>Defendants. | No. 2:07-cv-02049-RSM<br><br>DECLARATION OF GERARD SCHAEFER, PE, CFEI, CFII IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>Noted on Motion Calendar:<br>Friday, April 24, 2009 |

The undersigned states under the penalty of perjury under the laws of the State of Washington:

1. <u>Background</u>: I am a Professional Engineer licensed by the State of Washington. I am also a NAFI Certified Fire & Explosion Investigator and Instructor (CFEI & CFII). My curriculum vitae which includes my training and education is attached as Attachment 1 to my FRCP 26(a)(2) report dated December 12, 2008 which is also attached.

| | |
|---|---|
| Declaration of Gerard Schaefer<br><br>Page  - 1 | Evezich Law Offices, P.L.L.C.<br>600 University St., Suite 2701<br>Seattle, WA  98101<br>Tel: 206-576-6900; Fax: 206-624-8241 |

During my eighteen year career, I have investigated approximately 1,000 fires.

All opinions are expressed on a more probable than not basis.

2. <u>Trevor Nipges Drawing:</u> Attached to this declaration is a true and correct copy of the scene diagram drawn by Mr. Trevor Nipges when I examined the Scene on May 16, 2006.

3. <u>Standards for Investigating Fires:</u> The National Fire Protection Association publishes standards for investigation of fire origin and cause. I follow these standards, particularly NFPA 921, as well as the "Scientific Method" (generally and as referenced in NFPA 921) while conducting all of my investigation.

NFPA 1033 (2003 ed.) provides the standards required for those who conduct fire scene examination. It provides that in order to meet those standards, the investigator needs to keep up on all current literature and training regarding fire scene examination. If someone is not familiar with the NFPA standards, particularly NFPA 921, or as in this case not even aware that such standards exist, that person does not even meet the most basic qualifications outlined in NFPA 1033. If the person offers opinions regarding a fire's origin and cause without using the methods in NFPA 921, they are not conducting a thorough fire scene investigation, they are just giving their own unsubstantiated theories on a fire's origin and cause.

During my investigation of this fire, I adhered to the NFPA 921 (2004 ed.) and used the procedures in that document, the scientific method, and my training and experience, in determining the origin and cause of the fire.

4. <u>Initial Identification of ATV as Possible Cause of Fire & Role of Recall:</u> When I first visited the scene, I knew that there had been a recall of some Polaris 2004 TrailBoss ATVs. However, I didn't know if this ATV had been recalled. I conduct all of my examinations without

Declaration of Gerard Schaefer

Page - 2

Evezich Law Offices, P.L.L.C.
600 University St., Suite 2701
Seattle, WA 98101
Tel: 206-576-6900; Fax: 206-624-8241

presumption regarding the case and did so in this case. The recall had no impact regarding my determination regarding the origin or cause of the fire.

Prior to arriving on the scene, I talked with Mr. and Ms. Nipges by phone and then examined the scene on May 16, 2006. I spent the better part of the day at the scene and reviewed the physical evidence and again interviewed the Nipges. At the end of that examination, I had formed an initial belief that the ATV was a possible cause of the fire.

Forming such conclusions is necessary so that any interested parties may be notified of the loss and have an opportunity to review the scene prior to its destruction. This is standard practice in the industry.

In my report of May 18, 2007, I noted that I could not confirm if the subject ATV was included in the recall.

I later performed additional research as referenced in my report and came to the conclusions in the report.

5. "Direct Communication" of Gasoline Can with Fire (§6 - 9): In several places in my report I use the term "direct communication" of the gasoline can with the fire and discuss the fact there was no explosion or "flash fire." To clear up any confusion, the gasoline can burned in the driveway, remote from the structure fire and the subject ATV.

With regard to the exhaust system of the ATV lighting the gasoline can, no portion of the exhaust system could have contacted the gasoline can. The exhaust for the ATV does not come out the right side of the ATV (where Nipges stated the gasoline can was located); rather, it comes out the bottom of the muffler underneath the ATV near the right rear corner. The gasoline can could not have been located under the ATV or even immediately adjacent the

Declaration of Gerard Schaefer

Page - 3

Evezich Law Offices, P.L.L.C.
600 University St., Suite 2701
Seattle, WA  98101
Tel: 206-576-6900; Fax: 206-624-8241

exhaust to it because it wouldn't reasonably fit. Additionally, the gasoline tank burned in the upright position, so it wasn't knocked over. A picture of the gasoline can as found at the scene is attached and the bottom of it is undamaged which indicates it was protected by the driveway and burning upright.

In order for the ATV to provide an ignition source to ignite a plastic gasoline can, the gasoline can would have to have touched the ATV or been very close to it. The gasoline can cannot reasonably come in direct contact with any potential ignition sources on the ATV, principally the exhaust system, because they such sources are protected from objects the size and shape of the gasoline can by the configuration of the ATV. The gasoline can was at least 2' away from the ATV in the closest drawn position which is much too far for direct ignition of the gasoline can by any portion or system of the ATV. Thus, the gasoline can was not a risk of ignition from a normally operating ATV where located.

The fact that there was no explosion or "flash fire" is obvious from Mr. Nipges lack of description of the same, lack of damage to his hair, evidence of any explosion or flash fire, and condition of the gasoline can after the incident.

6. Burn on Outside of Leg Only & Manner of Pants Burned (§4, 5, 6 & 7): This evidence is significant for several reasons. First, when Nipges is seated on the ATV, the inside of his leg is protected by the ATV and his pants are pushed next to his leg because of the ATV's cowling, leaving a gap in his cuff on the outside of leg.

Second, the fire only caused damage to the skin on his leg. This is significant because it shows the fire started below his leg and grew very fast moving into his pant cuff before he was aware there was a fire. The speed in which this fire grew is consistent with a gasoline

Declaration of Gerard Schaefer

Page - 4

Evezich Law Offices, P.L.L.C.
600 University St., Suite 2701
Seattle, WA  98101
Tel: 206-576-6900; Fax: 206-624-8241

leak from the ATV and there were no other fuels available which could have made a rapidly growing fire which could enter his pant cuff from below the ATV.  Therefore, more likely than not, the first ignited fuel was gasoline.  If gasoline had been spilled or leaked a distance from an ignition source, such as from the gasoline can, a flash fire or explosion would have occurred.

Finally, his pants were not damaged.  This shows that heat was not coming from the exterior of his pants through the fabric to his leg because the material of his pants would have transmitted heat leading to discovery of the fire prior to his leg being burned.

It also shows that no combustible liquid was spilled on his pants which ignited and caused the fire.  This is because if combustible liquid (i.e., gasoline) had been spilled on his pants, the area where the gasoline had spilled would have been protected by the liquid gasoline, however, there would have been burning of the pant leg near the edge of where the gasoline was spilled as this part of the fabric would not have been cooled by the gasoline and damage to his pant leg would have occurred.

7. <u>ATV as Ignition Source (§5)</u>:  As stated, ATV engines, and similar engines, are recognized as competent ignition sources for gasoline.  It's true that the majority of the time, a gasoline leak will not be ignited by a vehicle's engine; however, it's not impossible.  NFPA 921, chapter 25, is entitled "Motor Vehicle Fires."  §25.4 states:

> **Ignition Sources**.  In most cases, the sources of ignition energy in motor vehicle fires are similar to those associated with structural fires…. There are however. Some unique sources that should be considered, such as the hot surfaces of the engine exhaust system…. Other hot surfaces ignition sources may include brakes, bearings, and turbochargers.  Because some of these ignition

Declaration of Gerard Schaefer

Page - 5

Evezich Law Offices, P.L.L.C.
600 University St., Suite 2701
Seattle, WA  98101
Tel: 206-576-6900; Fax: 206-624-8241

> sources may be difficult to identify following a fire, the description in 25.4.1 through 25.4.5 are provided to assist in their recognition.
>
> §25.4.3.2. Typically, gasoline will not be ignited by a hot surface, but requires an arc, spark, or open flame for ignition. While ignition of gasoline vapors by a hot surface is difficult to reproduce, such ignitions should not be dismissed out of hand. As reported by La Pointe, et. al., ignition of liquids by hot surface in the open air was not observed until the surface temperature was several hundred degrees above the published ignition temperature. The ignition of liquids by hot surfaces is influenced and determined by many factors, not just ignition temperature. These factors include ventilation, environmental conditions, such as humidity, air temperature and airflow; and fluids' physical properties such as auto ignition point, liquid flash point, liquid boiling point, liquid vapor pressure, liquid vaporization rate, and misting of liquid. Other factors include hot surface roughness, material type, and residence time of the liquid on the hot surface."

Gasoline can ignite on hot surfaces such as some exterior portions of internal combustion engines, and I have seen, and conducted tests in the course of my work on other cases which prove that gasoline can ignite on hot surfaces as acknowledged in NFPA 921. Gasoline's auto-ignition temperature is 246-280°C and typical exhaust temperatures of a four stroke engine, like the one in the subject ATV is approximately 425°C. Thus, the ATV's engine can, and likely did in this case, serve as a competent ignition source of the leaking gasoline.

8. <u>Gasoline Leak in Exemplar</u>: In Scott Roberts' report, he mentions that he examined an exemplar ATV similar to the subject ATV. I examined the exemplar ATV on January 19, 2009. I had the exemplar tilted up so I could examine its undercarriage. Upon examining the fuel pump, I noticed that it was "zip tied" to the undercarriage, not mounted. In his deposition of March 23, 2009, Mr. Macon claimed this was a gravity fed fuel system, but it is not, it has a fuel pump.

Declaration of Gerard Schaefer

Page - 6

Evezich Law Offices, P.L.L.C.
600 University St., Suite 2701
Seattle, WA  98101
Tel: 206-576-6900; Fax: 206-624-8241

When I examined the fuel pump, I noticed a gasoline leak on the inlet side of the fuel pump near the left front corner of the engine. This leak is readily available to be seen upon inspection. Pictures I took of this leak are attached. The wetness on the left line is visible evidence of a gasoline leak.

The fuel pump is located at the left front corner of the ATV (when in riding position) and that is within the area of origin for this fire.

Due to the amount of destruction in the subject ATV, I cannot offer an opinion as to whether it had the same defect; however, any leaking fuel, such as that from the exemplar's fuel pump, could have served as a fuel source for this fire. The fuel leak is the defect which creates the hazard. That leaked fuel can be ignited by multiple sources within and on an operating internal combustion engine is normal to their operation. Experience with similar machines indicates that sufficient temperatures and conditions to ignite leaked gasoline can be achieved in the time the subject ATV had been running on the day of the fire.

Signed under penalty of perjury under the laws of the State of Washington this 16TH day of April, 2009, at Seattle, Washington.

_____
Gerard F. Schaefer, P.E., CFEI & CFII

Declaration of Gerard Schaefer

Page - 7

Evezich Law Offices, P.L.L.C.
600 University St., Suite 2701
Seattle, WA 98101
Tel: 206-576-6900; Fax: 206-624-8241